UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

JOHN TRISVAN,

                        Plaintiff,

                v.

TOM HEYMAN, *President, Johnson and Johnson Development Corporation*; ALEX GORSKY, *Chairman and CEO, Johnson and Johnson*; JOAQUIN DUATO, *Chairman*; JOHNSON AND JOHNSON DEVELOPMENT CORPOATION; JANSSEN PHARMACEUTICALS; SIR PHILLIP HAMPTON, *Chairman, Glaxosmithkline*; ANDREW WITTY, *CEO, Glaxosmithkline*; GLAXOSMITHKLINE, LLC,

                        Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-00084 (MKB)

MARGO K. BRODIE, United States District Judge:

   Plaintiff John Trisvan, proceeding *pro se*, commenced the above-captioned action[1] on November 23, 2015 against Defendants Tom Heyman, Alex Gorsky, Joaquin Duato, Sir Phillip Hampton, and Andrew Witty, alleging liability for their role in the manufacturing and marketing of pharmaceutical drugs Risperdal and Wellbutrin.  (Compl., Docket Entry No. 1.)  Plaintiff alleges that Risperdal and Wellbutrin caused him weight gain, gynecomastia, hypertension, and liver damage.  (*Id.*)  On April 14, 2017, Plaintiff filed an Amended Complaint adding Johnson and Johnson Development Corporation, Janssen Pharmaceuticals, and Glaxosmithkline, LLC as

---

   [1]  This action was originally filed in the Northern District of New York and was transferred to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) on January 4, 2016.  (Order dated January 4, 2016, Docket Entry No. 4.)

Defendants.[2] (Am. Compl., Docket Entry No. 34.)[3] While Plaintiff has not alleged that Defendants have violated any specific laws, the Court interprets the Amended Complaint to raise New York state law claims for failure to warn, design defect, and fraud.

Defendants now move to dismiss the Amended Complaint for lack of personal jurisdiction, and failure to state a claim pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure.[4] (GSK Defs. Second Mot. to Dismiss ("GSK Second Mot."), Docket Entry No. 44; GSK Defs. Mem. in Supp. of GSK Second Mot. ("GSK Mem."), Docket Entry No. 44-1; Janssen Defs. Second Mot. to Dismiss ("Janssen Second Mot."), Docket Entry No. 47; Janssen Defs. Mem. in Supp. of Janssen Second Mot. ("Janssen Mem."), Docket Entry No. 48.) For the reasons discussed below, the Court grants Defendants' motions to dismiss in their entirety.

---

[2] For ease of reference, the Court refers to Heyman, Gorsky, Duato, Janssen Pharmaceutical, Inc., and Janssen Research & Development, LLC collectively as the "Janssen Defendants." According to the Janssen Defendants, Johnson and Johnson Development Corporation and Janssen Pharmaceuticals are non-entities and Plaintiff appears to be suing Janssen Pharmaceutical, Inc., and Janssen Research & Development, LLC. The Court understands the Janssen Defendants to be seeking a substitution for the named corporate entities. The Clerk of the Court is directed to substitute Janssen Pharmaceutical, Inc., and Janssen Research & Development, LLC for Johnson and Johnson Development Corporation and Janssen Pharmaceuticals. The Court also refers to Witty, Hampton, and GlaxoSmithKline LLC collectively as the "GSK Defendants." Plaintiff sued the individual defendants in their capacity as corporate executives of their respective corporations.

[3] In May of 2016, Defendants moved to dismiss the Complaint for lack of personal jurisdiction, proper service, and for failure to state a claim pursuant to Rules 12(b)(2), (5), and (6) of the Federal Rules of Civil Procedure. (GSK Defs. Mot. to Dismiss ("GSK Defs. Mot."), Docket Entry No. 23; Janssen Defs. Mot. to Dismiss ("Janssen Defs. Mot."), Docket Entry No. 25.) By Memorandum and Order dated March 24, 2017, the Court granted Defendants' motions to dismiss for failure to state a claim but granted Plaintiff leave to amend. (Memorandum and Order dated March 24, 2017, Docket Entry No. 33.)

[4] Defendants Hampton and Witty also seek dismissal for lack of proper service. (*See* GSK Defs. Second Mot. to Dismiss ("GSK Second Mot."), Docket Entry No. 44.) However, Hampton and Witty waived service on December 28, 2017. (*See* December 28, 2017 Letter re: Waiver of service, Docket Entry No. 59.) Accordingly, the Court finds their lack of service argument to be moot.

## I. Background

The facts alleged in the Amended Complaint are assumed to be true for the purpose of deciding Defendants' motions. Because Plaintiff is proceeding *pro se*, the Court also considers and assumes the truth of Plaintiff's factual allegations in his opposition to the motions. *See, e.g., Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Small v. Ortlieb*, No. 10-CV-1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this [c]ourt's duty to construe *pro se* pleadings liberally, the [c]ourt will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers." (citation omitted)).

### a. Plaintiff's medical history

In 1999, at the age of twenty-three, Plaintiff was diagnosed with depression and psychosis. (Am. Compl. 3.) On or around 2001, Plaintiff was prescribed the medications Risperdal and Wellbutrin by his then-psychiatrist to treat the symptoms of depression and psychosis. (*Id.* at 4.) Within two years of taking these medications, Plaintiff developed gynecomastia, hypertension, and gained almost 100 pounds of weight. (*Id.*)

On September 14, 2015, Plaintiff received test results indicating he had an enlarged liver and was in the early stages of fatty liver disease. (*Id.*) Plaintiff's medical physician informed him that the medication he was being prescribed by his then-psychiatrist was known to cause liver damage. (*Id.*) Plaintiff had never previously been informed of any potential side-effects of taking Risperdal and Wellbutrin. (*Id.*)

### b. Development and marketing of Risperdal and Wellbutrin

In 1994, the Janssen Defendants began manufacturing Risperdal for public use.[5]  (*Id.*)

Over the years, the Janssen Defendants have agreed to settlements with state governments and

the United States Department of Justice ("DOJ") for improper promotion of off-label uses of

Risperdal.  (Pl. Opp'n to Defs. Mot. ("Pl. Opp'n") 3, 23-33, Docket Entry No. 43.)  While

Risperdal had only been FDA-approved for the treatment of schizophrenia and "Bipolar I

Disorder" in adults, the Janssen Defendants promoted the product for "unapproved uses,

including dementia in elderly patients, schizophrenia and bi-polar disorder in children and

adolescents, and depression . . . ."  (*Id.* at 33.)  The settlements focused on conduct that took

place between January 1, 1999 and December 31, 2005.  (*Id.* at 30.)  Individual Janssen

Defendants Gorsky, Duato, and Heyman joined the company in 1988, 1989, and 2008,

respectively.  (*Id.* at 2–3.)

From January of 1999 to December of 2003, the GSK Defendants promoted Wellbutrin,

"approved at that time only for Major Depressive Disorder, for weight loss, the treatment of

sexual dysfunction, substance addictions and Attention Deficit Hyperactivity Disorder, among

other off-label uses."  (*Id.* at 11.)  To promote these off-label uses, the GSK Defendants, *inter*

*alia*, "paid millions of dollars to doctors to speak at and attend meetings, . . . [and] sham advisory

---

[5]  Defendants appear to be brand-name drug manufacturers of the medications at issue. *See In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734, 737 (E.D. Pa. 2015), *aff'd sub nom. In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017), *judgment entered sub nom. In re Wellbutrin XL Antitrust Litig.*, No. 15-2875, 2017 WL 3529114 (3d Cir. Aug. 9, 2017); *In re Zyprexa Prod. Liab. Litig.*, 671 F. Supp. 2d 397, 412 (E.D.N.Y. 2009).  The Court notes that categorization of Defendants as either brand-name or generic manufacturers impacts whether the alleged claims are preempted by federal law. *Cf. Wyeth v. Levine*, 555 U.S. 555, 581 (2009) (holding that state failure to warn claims were not preempted as to brand-name drugs); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 476 (2013) (holding that state design defect claims based on inadequate warnings were preempted as to generic drugs).  Defendants, however, have not raised any preemption defenses.

boards." (*Id.*)  As a result of these and other practices, GSK agreed to a settlement with the DOJ and various state governments because "its labeling did not bear adequate directions for . . . off-label uses." (*Id.* at 12.)  Individual GSK Defendants Witty and Hampton both served as executives of the company "during the time Plaintiff was injured." (Am. Compl. 5.)

## II. Discussion

### a. Standards of Review

#### i. Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)); *see also Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 44–45 (2d Cir. 2016) ("In opposing a motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of establishing that the court has jurisdiction over defendants." (citations, alterations and internal quotation marks omitted)).  The plaintiff's burden is governed by a "sliding scale," which "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Id.* at 85 (quoting *Ball*, 902 F.3d at 197); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) (same).  Prior to discovery, a plaintiff need only plead "an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester*, 722

F.3d at 84 (quoting *Ball*, 902 F.3d at 197); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x. 16, 19 (2d Cir. 2015) ("A *prima facie* case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998))). After discovery, the plaintiff's prima facie showing must be factually supported. *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *Ball*, 902 F.3d at 197).

The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *Grundstein v. Eide*, 598 F. App'x 45, 46 (2d Cir. 2015) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). However, the court need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), *cert. denied sub nom. O'Neill v. Al Rajhi Bank*, 134 S. Ct. 2870 (2014) (quoting *Jazini*, 148 F.3d at 185). In resolving a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), a district court may consider materials outside the pleadings. *Dorchester Fin. Sec.*, 722 F.3d at 86 (citing *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)); *Pinto-Thomaz v. Cusi*, No. 15-CV-1993, 2015 WL 7571833, at *3 (S.D.N.Y. Nov. 24, 2015) (citing *DiStefano*, 286 F.3d at 84).

In a case based on diversity jurisdiction, personal jurisdiction is determined by the law of the state in which the court sits. *Ash v. Richards*, 572 F. App'x 52, 53 (2d Cir. 2014) (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The court must first look to the state's long-arm statute. *Whitaker*, 261 F.3d at 208. If the court can exercise jurisdiction pursuant to the long-arm statute, the court must subsequently determine whether the exercise of

personal jurisdiction over the defendant would comport with the Due Process Clause of the United States Constitution. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) ("If, but only if, our answer is in the affirmative, we must then determine whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945))).

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to

construe a *pro se* complaint liberally”).

### iii. Rule 9(b)

“Rule 9(b) requires that ‘[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.’”[6] *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)). “To satisfy this Rule, a complaint alleging fraud must ‘(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.’” *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Ultimately, whether a complaint satisfies Rule 9(b) “depends ‘upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.’” *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (citation omitted); *see United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 787 (S.D.N.Y. 2017) (quoting same); *Kane ex rel, U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 383 (S.D.N.Y. 2015) (quoting same); *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014) (quoting same); *see also Rombach v. Chang*, 355 F.3d 164, 171 (discussing the purpose of the particularity requirement and emphasizing fair notice to the defendant).

### b. The Court lacks personal jurisdiction over Defendants Hampton and Witty

GSK Defendants argue the Court lacks personal jurisdiction over Defendants Hampton

---

[6] Common law fraud claims must meet the particularity requirements of Rule 9(b). *See Muller-Paisner v. TIAA*, 289 F. App’x 461, 463 (2d Cir. 2008).

and Witty because they are "residents of the United Kingdom with no substantial contacts with the State of New York" and "did not manufacture or distribute any medications, including Wellbutrin, in their individual capacities, or have any involvement in Plaintiff's alleged use of the drug." (GSK Mem. 4–6.) In addition, GSK Defendants contend that Hampton and Witty worked for GSK plc, "a separate and distinct legal entity from GSK LLC, the manufacturer and distributor of Wellbutrin." (*Id.* at 4–5.) Plaintiff argues the Court has personal jurisdiction over Hampton and Witty through the application of the "effects doctrine," based on their alleged roles "oversee[ing] the manufacturing as well as distribution of [Wellbutrin]." (Am. Compl. 5.) Plaintiff also asserts that Hampton and Witty "maintain joint control and hold a majority of [GSK plc's] shares and proceeds from the corporation." (*Id.*)

"There are two types of personal jurisdiction: specific and general." *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 225 (2d Cir. 2014), *cert. denied*, 134 S. Ct. 2888 (2014). General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum. *Id.* ("A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation — even those entirely unrelated to the defendant's contacts with the state."). Specific jurisdiction requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim. *Id.* ("Specific or conduct-linked jurisdiction . . . 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.'") (alteration omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Under New York law, courts exercise specific jurisdiction pursuant to New York Civil Practice Law and Rules ("CPLR") section 302 and general jurisdiction

pursuant to CPLR section 301.

"Section 302(a) . . . confers [specific] jurisdiction over individual corporate officers who supervise and control an infringing activity." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Belabbas v. Inova Software Inc.*, No. 16-CV-7379, 2017 WL 3669512, at *3 (S.D.N.Y. Aug. 24, 2017) ("New York law does not distinguish actions taken in a defendant's personal capacity from actions taken in his 'corporate' capacity." (citing *Chloe*, 616 F.3d at 164)). A plaintiff "must show that the officer is a 'primary actor[ ] in the transaction in New York' and not merely 'some corporate employee . . . who played no part' in the allegedly tortious act."[7] *Giuliano v. Barch*, No. 16-CV-0859, 2017 WL 1234042, at *12 (S.D.N.Y. Mar. 31, 2017) (quoting *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988)). To be subject to jurisdiction, the officer must have "exercised some control over the purposeful activity" directed in or to the state. *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 328 (S.D.N.Y. 2015); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (citing *Retail Software*, 854 F.2d at 22 for proposition that "New York law and due process [was] satisfied [for specific jurisdiction] where corporate officers allegedly benefitted from [corporation's in-forum] activities and exercised extensive control over [corporation] in the transaction underlying th[e] suit")).

"To make a prima facie showing of control, a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a primary actor in the specific matter in question." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 328 (S.D.N.Y. 2015) (quoting *ADP Inv'r Commc'n Servs., v. In House Attorney Servs., Inc.*, 390 F. Supp. 2d

---

[7]  Courts often appear to require the officer to personally benefit from the transactions at issue. *See Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 27 (E.D.N.Y. 2013) (collecting cases).

212, 219 (E.D.N.Y. 2005)). "[C]ontrol cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." *Id.* In evaluating control, courts often examine whether the officer had any direct involvement, knowledge, or consented to the transactions at issue. *See Vista Food Exch., Inc. v. Champion Foodservice, LLC.*, No. 14-CV-804, 2014 WL 3857053, at *7 (S.D.N.Y. Aug. 5, 2014) (finding that courts have imputed personal jurisdiction to individual defendants where the officers had "negotiated or . . . signed . . . or were parties to the agreements"); *New York v. Mountain Tobacco Co.*, No. 12-CV-6276, 2015 WL 893625, at *3 (E.D.N.Y. Feb. 26, 2015) ("Being a primary actor in the transaction[s] at issue requires that the officer have knowledge and consent to the transaction carried out by the agent-corporation and that the officer have exercised control over the corporation in the transaction." (citations omitted)); *Nelson A. Taylor Co., Inc. v. Technology Dynamics Group Inc.*, No. 95-CV-0431, 1997 WL 176325, at *5 (N.D.N.Y. Apr. 7, 1997) (personal jurisdiction imputed when defendants were alleged to have negotiated and signed the agreements in dispute, personally controlled all transactions, and authored virtually all correspondence); *Sterling Interiors Group, Inc. v. Haworth*, No. 94-CV-9216, 1996 WL 426379, at *15 (S.D.N.Y. July 30, 1996) (finding that participation in a scheme and the belief that individual, non-shareholding defendants were "believed to be or to have been fully aware of . . . condoned and directed the perpetuation of the scheme" were insufficient to establish personal jurisdiction). In certain cases, *extensive* control over the day to day operations of a corporation may also be sufficient. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016) (affirming district court's imputation of contracts of corporation to corporate defendant who had "extensive control over . . . day-to-day activities" and controlled all "final decisions").

The Court interprets the parties' dispute to be over the application of specific jurisdiction. Both parties agree that Hampton and Witty are domiciled in the United Kingdom, and have not transacted any business in New York as individuals. General jurisdiction, therefore, is improper. *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) ("General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" (citation omitted)); *Pinto-Thomaz v. Cusi*, No. 15-CV-1993, 2015 WL 7571833, at *5 (S.D.N.Y. Nov. 24, 2015) ("New York courts have concluded that CPLR 301 applies to persons acting only in their individual capacities, and that their activities on behalf of an employer or corporation will not support the exercise of personal jurisdiction." (citations omitted)). Moreover, the effects doctrine confers at most specific jurisdiction over defendants. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016) (applying the "effects test" to determine whether the court had specific jurisdiction over the defendants); *see also Charles Schwab*, 883 F.3d at 87 (explaining the "effects test" is used to determine whether specific jurisdiction exists "where 'the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff'" (citations omitted)).[8]

---

[8] Section 302(a) encompasses tortious acts taking place within and out of state. *See* N.Y. CPLR § 302(a)–(c). In the context of corporate officers, the applicability of the "effects test" would appear to depend on whether the corporate activity over which they exercised control occurred in or outside of New York. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 254 (2d Cir. 2007) (finding Section 302(a)(3) to be "roughly analogous to the 'effects test'"). Because specific jurisdiction over corporate officers under Section 302(a) is based on imputed conduct by the corporation, tortious actions taken inside the state by the corporation would not appear to implicate the "effects test." *See id.* ("[The] 'effects test[]' . . . is not relevant to the New York long-arm statute analysis under section 302(a)(1)."); *Int'l Diamond Importers, Inc. v. Med Art, Inc.*, No. 15-CV-4045, 2017 WL 2839640, at *6 (S.D.N.Y. June 29, 2017) ("Out-of-state corporate officers are subject to jurisdiction under Section 302(a) when they supervise and control an infringing activity or are primary actors in the transaction." (citations omitted)).

Plaintiff fails to sufficiently allege control by Hampton and Witty over the sale or promotion of Wellbutrin to allow for the exercise of personal jurisdiction over them. Neither the Amended Complaint nor the opposition submission provide any non-conclusory allegations of personal involvement by Hampton or Witty. Instead, Plaintiff appears to assume their involvement on the basis of their positions as Chairman and CEO of GSK plc,[9] the principal of GSK LLC,[10] the makers and manufacturers of Wellbutrin. (*See* Am. Compl. 5 ("Hampton and . . . Witty are respectively, the Chairman and CEO, who both oversee the manufacturing as well as distribution of the drugs being made and sold by the corporation's subsidiaries."); *id.* ("Hampton . . . and Witty during the time Plaintiff was injured was presently the Chairman and CEO of GlaxoSmithKline PLC . . . ."); Pl. Opp'n 2 ("Witty and Hampton were respectively the CEO and Chairman of GlaxoSmithKline . . . .").) Further, the only reference to either Defendant in the

---

Neither the officers' residence nor the location of their decisions appears to be determinative of the application of the effects test.

[9] Plaintiff also fails to allege how any control by Hampton and Witty over GSK plc impacted any transactions undertaken by GSK LLC. To the extent he is relying solely on Hampton and Witty's positions at GSK plc, Plaintiff would likely also have to show their control over GSK plc influenced the actions taken by GSK LLC with regard to the transactions at issue. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984) ("The officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction.").

[10] Plaintiff also appears to confuse the positions of Chairman and CEOs to be the owners of a corporation. (*See* Am. Compl. 5 ("With Defendant GlaxoSmithKline LLC being a subsidiary of GlaxoSmithKline PLC, . . . Hampton and Witty maintain joint control and hold a majority of shares and proceeds from the corporation.").) Even if true, Plaintiff's allegations are insufficient to establish personal jurisdiction over Hampton and Witty. Majority ownership of a company does not necessarily mean Hampton and Witty exercised control over the transactions at issue or final decision-making authority over all transactions. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016); *see also Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 328 (S.D.N.Y. 2015).

articles covering GSK's settlements attached to the opposition submission is Witty's apology on behalf of the corporation. These allegations are insufficient to impute any corporate misfeasance to Hampton and Witty for purposes of personal jurisdiction. Accordingly, Defendants Hampton and Witty are dismissed from this action with prejudice.

### c. Statute of limitations

Defendants argue that Plaintiffs' claims based on weight gain, hypertension, and gynecomastia are untimely.[11] (GSK Mem. 6–7; Janssen Mem. 9–11.) Plaintiff offers no response.

In diversity actions, "a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998); *see also 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, No. --- F. App'x ---, ---, 2017 WL 6540498, at *2 (2d Cir. Dec. 21, 2017) ("Federal courts sitting in diversity jurisdiction apply the procedural statute of limitations and choice-of-law rules of the forum state." (citing *Stuart*, 158 F.3d at 627)). "Because a statute of limitations is an affirmative defense, [a defendant] bears the burden of proof to show . . . the claims [are barred]." *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 230 (2d Cir. 2014) (citations omitted). Once a defendant is able to make out a prima facie case that the claims are untimely, "[t]he burden then shifts to the plaintiff to establish that the limitations period should be tolled." *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citations omitted).

---

[11] Defendants do not argue that Plaintiff's claims based on his liver damage are time-barred.

### i. Personal injury

Under New York law, "an action to recover damages for a personal injury" is subject to a three-year statute of limitations. CPLR § 214(5). The statute of limitations for personal injuries caused by latent effects of any substance accrue "from the date of discovery of the injury . . . or from the date when . . . such injury should have been discovered." *Bethpage Water Dist. v. Northrop Grumman Corp.*, 884 F.3d 118, 125 (2d Cir. 2018) (citing § 214-c(2)) (emphasis omitted). "[D]iscovery occurs when . . . 'the injured party discovers the primary condition on which the claim is based.'" *Id.* (quoting *MRI Broadway Rental, Inc. v. U.S. Min. Prods. Co.*, 92 N.Y.2d 421, 429 (1998)); *Matter of New York Cty. DES Litig.*, 89 N.Y.2d 506, 509 (1997) (holding that "CPLR § 214–c(2)'s reference to 'discovery of the injury' was intended to mean discovery of the condition on which the claim was based and nothing more"). "The fact that there may be a delay before 'the connection between th[e] symptoms and the injured's exposure to a toxic substance is recognized' does not delay the start of the limitations period." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 709 (2d Cir. 2004); *Martin v. 159 W. 80 St. Corp.*, 770 N.Y.S.2d 720, 722 (App. Div. 2004) ("The three-year statute of limitations of CPLR 214–c(2) runs from the time a plaintiff discovers an injury, that is, from the time she realizes that she has the physical manifestations of illness, regardless of when she learns of the cause.").

CPLR § 214-c(4) provides a narrow exception to the three-year statute of limitations. That provision applies "where 'technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized.'" *Bano*, 361 F.3d at 707 (quoting CPLR § 214-c(4)). "In such circumstances, 'where the discovery of the cause of the injury is alleged to have occurred less than five years

after discovery of the injury . . . an action may be commenced or a claim filed within one year of such discovery of the cause of the injury.'" *Id.*; *Bethpage*, 2018 WL 1122317, at *11 ("[*I*]*f* a plaintiff discovers an injury *and* discovers within the next five years the cause of that injury, the statute of limitations is extended to one year after the discovery of the cause.").

Plaintiff's failure to warn and design defect claims based on his weight gain, hypertension, and gynecomastia are time-barred. *See Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 429 (S.D.N.Y. 2011) (holding failure to warn and design defect claims to be subject to three-year statute of limitations period); *Fathi v. Pfizer Inc.*, 901 N.Y.S.2d 899 (Sup. Ct. 2009) (holding product liability causes of action (failure to warn and design defect) were subject to the three-year statute of limitations under CPLR § 214–c(2)). In the Amended Complaint, Plaintiff acknowledges he had "gained close to 100lbs,[] had developed a case of gynecomastia, and . . . beg[an] suffering from hypertension . . . by usage of [Risperdal and Wellbutrin]" two years after being prescribed the medications in 2001. (Am. Compl. 4.) Plaintiff commenced this action on November 23, 2015, well beyond the three-year statute of limitations in CPLR § 214–c(2). These claims would be time-barred even if the exception in CPLR § 214-c(4) applied. Had the exception applied, Plaintiff would have had to bring his claim by 2007 at the latest. *See Styles v. Goord*, 367 F. Supp. 2d 473, 474 (W.D.N.Y. 2005) (explaining CPLR § 214–c(4) "allows a plaintiff to bring a claim up to six years after discovering his injury" under the specified circumstances), *aff'd*, 198 F. App'x 36 (2d Cir. 2006)). Accordingly, the Court dismisses these claims with prejudice.

### ii.  Fraud

"In New York, the limitations period for a fraud claim is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud,

or could with reasonable diligence have discovered it.'" *Sejin Precision Indus. Co. v. Citibank, N.A.*, --- F. App'x ---, ---, 2018 WL 1151784, at *2 (2d Cir. Mar. 5, 2018) (quoting CPLR § 213(8)). A plaintiff, however, may not "tak[e] advantage of the longer limitations period" "[w]hen a fraud claim is incidental to another asserted claim." *ITT Corp. v. Lee*, 663 F. App'x 80, 85 (2d Cir. 2016) (quoting *Corcoran v. New York Power Auth.*, 202 F.3d 530, 545 (2d Cir. 1999)). "Otherwise, 'fraud would be used as a means to litigate stale claims.'" *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 450 (S.D.N.Y. 2014) (citation omitted), *aff'd*, 579 F. App'x 7 (2d Cir. 2014). "A fraud action is not incidental to another claim 'only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim.'" *ITT Corp*, 663 F. App'x at 85 (citations omitted). "Under the second prong, injuries must be truly distinct — exacerbation of the original injury due to an alleged fraud does not constitute a separate injury." *Twersky*, 993 F. Supp. 2d at 450 (citing *Corcoran*, 202 F.3d at 545).

Plaintiff's fraud claims are incidental to his personal injury claims. The only meaningful difference between the fraud and other claims is the element of *scienter* — knowledge of material misrepresentation or omission of fact and intent to defraud. *See New York Seven-Up Bottling Co. v. Dow Chem. Co.*, 466 N.Y.S.2d 478, 480 (App. Div. 1983) (holding fraud claim to be incidental to manufacturing defect claim based on representations made during marketing of product), *aff'd*, 61 N.Y.2d 828 (1984). Otherwise, the claims are identical in both their "genesis" and effect. Plaintiff's claims and injuries are all based on the same alleged failures to warn about the dangers of the medications or to create less dangerous products. *See id.* (dismissing fraud cause of action as time-barred where the "genesis of [the] claim [wa]s that [plaintiff] was injured

by a defective product").  Plaintiff may not "invoke the longer period of limitations" "by adding

an allegation of scienter."  *Id.*; *see also Fisher*, 783 F. Supp. 2d at 429 (finding fraudulent

concealment claim to be subject to same three-year statute of limitations as the product liability

claims); *Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 488 (S.D.N.Y. 2009) (finding

fraudulent concealment claim to be subject to the same three-year statute of limitations as failure

to warn claim); *Prohaska v. Sofamor, S.N.C.*, 138 F. Supp. 2d 422, 434 (W.D.N.Y. 2001)

(finding fraudulent misrepresentation claim to be subject to same three-year statute of limitations

as personal injury claims); *Larkins v. Glaxo Wellcome, Inc.*, No. 98-CV-4960, 1999 WL 360204,

at *10 (E.D.N.Y. May 20, 1999) (finding fraud claim to be subject to the same three-year statute

of limitations as failure to warn claim); *Fathi*, 901 N.Y.S.2d 899 (finding fraud claim to be

subject to the same three-year statute of limitations period as the product liability claims (failure

to warn and design defect)); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 07-

MD-1871, 2015 WL 1728127, at *4 (E.D. Pa. Apr. 10, 2015) (finding fraud claim to be subject

to same three-year statute of limitations as products liability claims, particularly the failure to

warn claim).  Accordingly, the fraud claim based on the injuries stemming from 2003 are also

time-barred.[12]

---

[12]  When the fraud claim is incidental to other claims, the statute of limitations for all
causes of action appear to accrue at the time of discovery of the *injury*.  *See Prohaska v.
Sofamor, S.N.C.*, 138 F. Supp. 2d 422, 434 (W.D.N.Y. 2001) (holding that "[t]he fraud statute of
limitations d[id] not apply [where the fraud claim was incidental to other causes of action]");
*New York Seven-Up Bottling Co. v. Dow Chem. Co.*, 466 N.Y.S.2d 478, 480 (App. Div. 1983)
("Where the allegations of fraud are only incidental to another cause of action, the fraud Statute
of Limitations *cannot be invoked*." (emphasis added)), *aff'd*, 61 N.Y.2d 828 (1984).  Otherwise,
claimants could work around the three-year statute of limitations for personal injury claims by
arguing that they only discovered the fraud at a later date.

### d. Failure to warn

Defendants argue that Plaintiff's failure to warn claim is inadequate for three reasons: (1) the application of the "learned intermediary doctrine," (GSK Mem. 10; Janssen Mem. 11); (2) Plaintiff's failure to sufficiently plead allegations demonstrating how the warning labels were inadequate, (GSK Mem. 12; Janssen Mem. 12); and (3) the long-history of disclosure of the complained about side-effects, (GSK Mem. 12; Janssen Mem. 13).[13]  Plaintiff contends that Defendants failed to warn him of the "hidden product dangers" and "intentionally hid from the public the harm that these drugs caused." (*See* Am. Compl 5–6.)  Specifically, Plaintiff alleges the medications failed to warn of "liver damage, cirrhosis, or fatty liver disease." (*Id.* at 6.)  Construed liberally, Plaintiff also appears to allege that Defendants "misled medical professionals" about the safety and efficiency of Risperdal and Wellbutrin, in particular with respect to off-label use.  (Am. Compl. 5; Pl. Opp'n 3–5, 10–33.)

"Under New York law, a pharmaceutical manufacturer has a duty 'to warn of all potential dangers in its prescription drugs that it knew, or, in the exercise of reasonable care, should have

---

[13] Defendants also argue that Plaintiff failed to adequately plead causation as to all claims. (GSK Mem. 9–10.) Construed liberally, Plaintiff does allege sufficient causation for purposes of a motion to dismiss. In the Amended Complaint, Plaintiff described how he spoke with a physician about his liver damage. (Am. Compl. 4.) Plaintiff and the physician apparently discussed potential causes of the liver damage, ultimately concluding that Risperdal and Wellbutrin may have been the cause of injury. (*Id.* at 4.) The Court takes these allegations to mean that Plaintiff consulted a physician who narrowed the most likely cause to be the two medications at issue. Plaintiff has also alleged (although insufficiently as to the other elements of his claims) that he would not have taken Risperdal and Wellbutrin if he had been informed by his doctor of the side-effects he experienced. (*Id.* 4–6); *see also Rosen v. St. Jude Med., Inc.*, 41 F. Supp. 3d 170, 187 (N.D.N.Y. 2014) (denying motion to dismiss where plaintiff alleged that "her injuries may have been avoided or mitigated had [d]efendants timely complied with their reporting requirements"). In addition, whether Risperdal or Wellbutrin caused Plaintiff's liver damage alone or together appears to be a matter better suited for summary judgment. *See Coleson v. Janssen Pharm., Inc.*, 251 F. Supp. 3d 716, 723 (S.D.N.Y. 2017) (granting summary judgment where expert report did not state which of two drugs (if not both) was responsible for plaintiff's injury).

known to exist.'" *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 611 (S.D.N.Y. 2012) (quoting *Martin v. Hacker*, 83 N.Y.2d 1, 8 (1993)); *see also In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 787 (2016) ("[F]ailure-to-warn claims grounded in strict liability and negligence are functionally equivalent." (citations omitted)). The manufacturer's duty to warn "is fulfilled by giving adequate warning through the prescribing physician, not directly to the patient." *Abrams v. Bute*, 27 N.Y.S.3d 58, 65 (App. Div. 2016) (citations omitted); *Dibartolo*, 914 F. Supp. 2d at 611 ("The New York Court of Appeals has adopted the Informed Intermediary Doctrine . . . , also known as the 'Learned Intermediary Doctrine,' which provides that a drug manufacturer's duty is to warn the treating physician, not the patient."). Pursuant to the "Learned Intermediary Doctrine," "a manufacturer's duty is to warn only of those dangers it knows of or are reasonably foreseeable." *Davids v. Novartis Pharm. Corp.*, 857 F. Supp. 2d 267, 286 (E.D.N.Y. 2012) (*Mulhall v. Hannafin*, 841 N.Y.S.2d 282, 285 (App. Div. 2007)).

To state a prima facie claim for failure to warn, "[a] plaintiff must demonstrate [1] that the warning was inadequate and [2] that the failure to adequately warn of the dangers of the drug was a proximate cause of his or her injuries." *DiBartolo*, 914 F. Supp. 2d at 611–12 (quoting *Glucksman v. Halsey Drug Co.*, 553 N.Y.S.2d 724, 726 (App. Div. 1990)); *see also Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87, 92 (2d Cir. 1980) ("The failure to give adequate warnings is the 'defect' in the product . . . The full burden of proving that such a defect existed and that this was a proximate cause of . . . injury remain[s] at all times on the plaintiffs.").

### i. Failure to warn about side-effects in general

"A warning is adequate as a matter of law 'if it provides specific detailed information on the risks of the drug.'" *McDowell v. Eli Lilly & Co.*, 58 F. Supp. 3d 391, 403 (S.D.N.Y. 2014) (quoting *Martin*, 607 N.Y.S.2d at 602). "In making this determination, the [c]ourt should

consider factors including 'whether the warning is accurate, clear, consistent on its face, and whether it portrays with sufficient intensity the risk involved in taking the drug.'" *Id.* at 403 (citation omitted). "A warning is accurate if it is 'correct, fully descriptive and complete, and . . . convey[s] updated information as to all of the drug's known side effects." *Dibartolo*, 914 F. Supp. 2d at 612. "A warning is clear if it employs language that is 'direct, unequivocal and sufficiently forceful to convey the risk.'" *Id.* "The warning should also be evaluated as a whole and not through the nitpicking prism of an interested legal advocate after the fact." *McDowell*, 58 F. Supp. 3d at 403.

Plaintiff fails to provide any non-conclusory allegations to suggest that his treating physicians were not informed of the potential side-effects of Risperdral and Wellbutrin of which he complains. (*See generally* Am. Compl.; Pl. Opp'n.) Instead, Plaintiff's chief complaint is that *he* was never informed about the risks by his treating physicians. (*See* Am. Compl. 4 ("At no time was [P]laintiff informed by mental health staff that there would be adverse effects behind consumption of these drugs."); *id.* ("Although Plaintiff received paperwork each time he received his medications from the nearby pharmacy . . . there was nothing on [the] paperwork indicating to *him* that both medications prescribed to him caused damage to his liver . . . .").) Plaintiff fails to allege any facts to suggest that his psychiatrists Flo Kaufman, Ray Rebortira, or any other treating physicians were not informed of the risks associated with Risperdal and Wellbutrin.

The Court also finds it significant that Plaintiff's claims appear to be based on his belief that there were *no* warnings about the relevant side-effects. (*See* Am. Compl. 4–6 (describing how plaintiff "[a]t no time" was informed about any side-effects and how "there was nothing on [his] paperwork" indicative of any side-effects and how Defendants allegedly concealed all

information about harms caused by the medications); Pl. Opp'n 4 ("Although Defendants state that . . . [the] labeling had expressly warned of such risks since its inception, claims of this sort if true, would have prevented these Defendants from pleading guilty . . . .").)  In contrast to most other failure to warn cases, the adequacy of the warning in this action turns on its mere existence. *See DiBartolo*, 914 F. Supp. 2d at 613 (explaining under more typical cases, courts "consider not merely the existence of a relevant warning, but also the qualitative adequacy of that warning"). Defendants, however, have offered FDA-approved labels as evidence of warnings provided to physicians contemporaneous with or predating Plaintiff's use of Risperdal and Wellbutrin.  *See Becker v. Cephalon, Inc.*, No. 14-CV-3864, 2015 WL 5472311, at *3 (S.D.N.Y. Sept. 15, 2015) (taking judicial notice of FDA-approved labels in assessing failure to warn claim "because the labels 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"); *Landow v. Wachovia Secs., LLC*, 966 F. Supp. 2d 106, 119 (E.D.N.Y. 2013) ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.").  At the very least, these FDA labels list weight gain, gynecomastia, hypertension, and liver damage as observed side-effects of Risperdal and Wellbutrin.  The GSK Defendants have also provided a copy of the 2001 Physician's Desk Reference ("PDR") which includes the same warnings.[14] (2001 PDR (listing potential for hepatoxicity (chemically driven liver damage), weight gain, hypertension, gynecomastia), annexed to GSK Second Mot. as Ex. 15, Docket Entry No. 44-2);[15]

---

[14]  The FDA-approved labels appear to be packets of information (twenty-one pages for Wellbutrin and twenty-four pages for Risperdal) designed to accompany packages of medication.

[15]  The Court does not conclude that the warnings as described were sufficient in all circumstances.  Instead, the Court finds that the warnings were sufficient based on Plaintiff's argument that *no* warnings were provided to his physicians.  *See Wyeth v. Levine*, 555 U.S. 555,

*see also Coleman v. State Supreme Court*, 697 F. Supp. 2d 493, 514 (S.D.N.Y. 2010) ("In assessing the adequacy of the warnings given, [courts] can take judicial notice of the description of pharmaceutical drugs in the [PDR]."); *Baker v. St. Agnes Hosp.*, 421 N.Y.S.2d 81, 83 (App. Div. 1979) (finding publication in PDR to be a "well-known method[] by which pharmaceutical manufacturers apprise the medical profession of the dangers of a drug"). Accordingly, Plaintiff's failure to warn claims based on a lack of *any* warnings are dismissed with prejudice as to the GSK Defendants. *See Becker*, 2015 WL 5472311, at *5 ("While a court must generally accept a plaintiff's factual allegations as true in evaluating a motion to dismiss, it 'need not accept as true allegations in a complaint that contradict or are inconsistent with judicially-noticed facts.'"). The same claim is dismissed without prejudice as to the Janssen Defendants because the Court cannot determine whether the warnings about Risperdal were available to physicians in any format other than through the FDA website.[16] *See* Drugs@FDA Instructions: Health

---

574 (2009) (rejecting arguments that FDA compliant labels could not be basis of state law claims for failure to warn).

[16] Courts that take judicial notice of FDA-approved labels in failure to warn cases appear to assume, often without expressly stating, that learned intermediaries can be imputed with constructive knowledge of warnings in the public domain. *See Becker v. Cephalon, Inc.*, No. 14-CV-3864, 2015 WL 5472311, at *5 (S.D.N.Y. Sept. 15, 2015) (dismissing failure to warn claim because plaintiff's allegations were "squarely contradicted by the [FDA] label"); *Alston v. Caraco Pharm., Inc.*, 670 F. Supp. 2d 279, 285 (S.D.N.Y. 2009) (assuming that the FDA-approved label from 2004 was communicated to physicians); *see also Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 164 (Ind. Ct. App. 1997) ("Actual or constructive knowledge may arise where either the supplier has provided an adequate explicit warning of such dangers or information of the product's dangers is available in the public domain."); Michael J. Farrell, *Medication Malpractice: Claims, Culprits and Defenses*, 16 Am. J. Trial Advoc. 65, 107 (1992) ("A physician can be deemed to have constructive knowledge of all drug product information (product package insert, [PDR], Dear Doctor letters, etc.)." (citations omitted)). The Court is hesitant to hold that manufacturers may discharge their duties to inform physicians of potential side-effects by solely providing information to the FDA. While it seems *likely* that information provided to the FDA is also provided to prescribing physicians, the Court would have to *assume* that to be the case based on the arguments presented in this action. Such an

Information, *available at* https://www.fda.gov/Drugs/InformationOnDrugs/ucm079450.htm

("The FDA approved label is the official description of a drug product . . . Labels are *often* found

inside drug product packaging." (emphasis added)); *see also Baker*, 421 N.Y.S.2d at 86

(declining to hold as a matter of law that manufacturer's decision to limit its warnings to

"package inserts" to be sufficient for serious side-effects); *Lindsay*, 637 F.2d at 92

("[W]arnings can be conveyed by means other than the drug package inserts, around which so

much of the controversy at trial centered.  They can be given by . . . representatives of . . .

manufacturers, . . . [PDR], . . . product cards distributed to doctors and available at medical

conventions and hospital exhibits, and . . . "Dear Doctor" letters . . . .").[17]  In amending this claim

---

assumption would conflict with New York law which requires manufacturers "to take . . . steps as are reasonably necessary to bring that knowledge to the attention of the medical profession." *Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 287 (E.D.N.Y. 2014) (quoting *Baker v. St. Agnes Hosp.*, 421 N.Y.S.2d 81, 85 (App. Div. 1979)); *see also Metz v. Wyeth LLC*, 872 F. Supp. 2d 1335, 1340 (M.D. Fla. 2012), ("[I]t would not be impossible for [the drug manufacturer] to comply with its obligations under federal and state law to the extent state law is determined to require [it] to *more effectively communicate* the FDA-approved label to medical providers and/or consumers." (emphasis added)), *aff'd*, 525 F. App'x 893 (11th Cir. 2013).  "The greater the potential hazard of the drug, the more extensive must be the manufacturer's efforts to make that hazard known to the medical profession."  *Baker*, 421 N.Y.S.2d at 85–86; *see also id.* (listing "[PDR]," "Dear Doctor letters," "notices in medical journals, and "the use of 'detail men'" as examples for how to sufficiently inform physicians).  In short, "it is incumbent upon the manufacturer to bring the warning home to the doctor."  *Id.* at 85 (quoting Rheingold, *Products Liability—The Ethical Drug Manufacturer's Liability*, 18 Rutgers U.L.Rev. 947, 993 (1964)).

[17]  The Court recognizes that relying on the PDR also requires imputing some form of constructive knowledge to physicians.  Nevertheless, FDA-approved labels appear to be similar or substantially the same as the "package inserts" or "warning labels" (if actually provided to physicians) discussed in *Baker v. St. Agnes Hosp.*, 421 N.Y.S.2d 81, 85 (App. Div. 1979).  *See also* Drugs@FDA Instructions: Health Information, *available at* https://www.fda.gov/Drugs/ InformationOnDrugs/ucm079450.htm ("A Patient Package Insert (PPI) contains information for patients on how to safely use a drug product.  It is part of the FDA-approved labeling."); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 817 F. Supp. 2d 535, 537 (E.D. Pa. 2011) ("The 'label,' . . .  is also known as the 'package insert' or 'professional labeling,' and is intended for use by health care practitioners, not patients.").  Throughout their submissions, Defendants request the Court to *assume* that the FDA-approved labeling has been made available

as to the Janssen Defendants, Plaintiff must provide non-conclusory allegations as to why he believes Defendants failed to provide warnings to his physicians.

### ii. Failure to warn about enhanced side-effects from foreseeable off-label use

Under New York law, "[a] manufacturer . . . has a duty to warn of the danger of unintended uses of a product provided these uses are reasonably foreseeable." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 80 (2d Cir. 2006). This duty extends to off-label use of prescription medication. *See Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 287 (E.D.N.Y. 2014) ("[A] patient prescribed an off-label use of a drug may be a reasonably foreseeable user of the product, such that a manufacturer has a duty to warn of all known adverse effects associated with such use.").

Construed liberally, Plaintiff may be arguing that Defendants failed to provide any warnings about the potential *increased* risk of off-label use. *See Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 629 (E.D. Pa. 2008) (holding manufacturer had a duty to warn about the "increased risk of [side-effects] associated with [off-label use]"). In his opposition submission, Plaintiff incorporates articles explaining Defendants' prior misconduct in promoting certain types of off-label usage, including failures to warn of side-effects specific to such use. (Pl. Opp'n 10–33.) As to Risperdal, Plaintiff states that the Janssen Defendants "misled officials about the risks . . . and marketed the drug for unapproved uses." (*Id.* at 3.) Plaintiff's claims

---

to physicians. Without some explanation to support their positions, the Court cannot assume that to be the case. Based on the limited information before it, the Court could find that the FDA-approved labels, especially if only accessible online, are aimed not at informing physicians but ensuring compliance with the FDA requirements. In addition, for serious side-effects, such as perhaps liver damage, New York State law as explained in *Baker* requires more than "package inserts" or "warning labels" to be able to deem the warnings sufficient as a matter of law. The GSK Defendants have at least provided the Court a PDR, in addition to its FDA-approved label for Wellbutrin.

based on this argument cannot be summarily dismissed by the mere existence of FDA-approved labels or PDR listing the complained of side-effects. Instead, the available warnings must be "accurate, clear, [and] consistent" as to the potential risks associated with foreseeable off-label use. *McDowell*, 58 F. Supp. 3d at 403. Otherwise, even physicians cannot be said to have been adequately informed of the risks associated with such off-label use.

Nevertheless, Plaintiff fails to allege sufficient detail to withstand a motion to dismiss even under this interpretation. As a threshold matter, Plaintiff fails to explain whether he was prescribed Risperdal and Wellbutrin for off-label use, and cannot make such allegations as to Wellbutrin. In the Amended Complaint, Plaintiff alleged that his doctors prescribed him Wellbutrin and Risperdal for depression and psychosis. (Am. Compl. 3–4.) Wellbutrin is a FDA-approved antidepressant for adults. (*See* Pl. Opp'n 11, 17.) Plaintiff cannot complain of the risks associated with off-label use of Wellbutrin when he was prescribed the medication for on-label use. *See In re Risperdral Litig: P.D. v. Janssen Pharms., Inc.*, 2017 Phila. Ct. Com. Pl. LEXIS 231, *13 (July 26, 2013) (finding "any discussion of 'off-label' promotion . . . irrelevant" because the "prescription was for an indicated usage within an indicated population"). Whether Plaintiff was prescribed Risperdal for on-label use is less clear. As late as 1999, on-label use for Risperdal included the "management of the manifestation of psychotic disorders." (*See* 1999 FDA Risperdal Label 4, annexed to Thomas P. Kurland Decl. in Supp. of Janssen Second Mot., Docket Entry No. 49, as Ex. F, Docket Entry No. 49-6.) In 2000, the FDA requested that the Risperdal label be changed "to more clearly state that [the drug] is indicated for the treatment of schizophrenia."[18] *See* FDA Letter Dated March 3, 2002 (noting requested changes discussed in

---

[18] The Janssen Defendants only attached a copy of the 1999 FDA-approved Risperdal label and did not inform the Court of this material change. (*See* 1999 FDA Risperdal Label,

the September 25, 2000 letter), *available at* https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2002/20272s8ltr.pdf; (*see also* Pl. Opp'n 24 ("For most of t[he] time period [between March 3, 2002 and December 31, 2003], Risperdal was approved only to treat schizophrenia.").) This potential discrepancy in the on-label use of Risperdal has not been addressed by the Janssen Defendants.[19] The Janssen Defendants also provide no authority that a diagnosis of "psychosis," either as a symptom or disorder necessarily means a person is suffering from schizophrenia or bipolar disorder. Indeed, the FDA's request in 2000 suggests the opposite. Based on these allegations, the Court cannot determine whether Plaintiff's use of Risperdal was on- or off-label.[20]

Even if his use of Risperdal was off-label, Plaintiff fails to provide any non-conclusory allegations as to how the warnings provided to his physicians were inadequate. Nor does Plaintiff provide any allegations as to the increased risk of any of the complained of side-effects specific to his off-label use. Plaintiff instead appears to rely solely on the Janssen Defendants' misconduct in promoting other off-label uses unrelated to his own condition. (*See* Pl. Opp'n 24–25 (describing misconduct involving promotion of Risperdal for unapproved uses for elderly

---

annexed to Thomas P. Kurland Decl. in Supp. of Janssen Second Mot., Docket Entry No. 49, as Ex. F, Docket Entry No. 49-6.)

[19] Indeed, the Janssen Defendants have been sued based on this issue in other courts. *See Wydermyer v. Janssen Pharm. Inc.*, No. 16-CV-01000, 2017 WL 3836143, at *1 (E.D. Tex. July 19, 2017) ("In 2000, the Food and Drug Administration ('FDA') requested that the label for Risperdal clearly indicate that it was only approved for treating schizophrenia in adults, rather than a broad range of psychotic disorders."), *report and recommendation adopted*, No. 16-CV-1000, 2017 WL 4129319 (E.D. Tex. Sept. 19, 2017); *United States v. Janssen Pharmaceuticals, Inc.*, 13-CR-00605, *settlement agreement filed* (E.D. Pa. Nov. 4, 2013).

[20] Plaintiff does not actually specify which drug was used for which diagnosis. However, Plaintiff does not contest the Janssen Defendants' characterization that he was being prescribed Risperdal for psychosis. The Court notes that Risperdal has been previously promoted off-label to treat depression. (Pl. Opp'n 32.)

nursing home residents, children, and individuals with mental disabilities); *id.* at 25 (describing Janssen Defendants' alleged withholding of information of increased risks of various side-effects in the elderly and children).) Rather than relying on allegations of general wrongdoing, Plaintiff must provide allegations specific to his own off-label use. The fact that the Janssen Defendants may have withheld information about the risks associated with other off-label uses of Risperdal does not lead to the inference that they did so with regards to every unapproved use.

For the foregoing reasons, the Court dismisses all failure to warn claims against the GSK Defendants with prejudice. Mindful of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend his failure to warn claims as to the Janssen Defendants. In amending the Amended Complaint, as to the claim based on his off-label use, Plaintiff must provide specific allegations explaining the purpose for which he has been prescribed Risperdal, the unique risks associated with his off-label use, and why the warnings provided to his physicians were inadequate.[21]

### e. Design Defect

Defendants argue that Plaintiff's design defect claim fails for two reasons: (1) lack of any specific allegations as to the "substantial likelihood of harm" posed by the drugs, (GSK Mem. 14 n.14; Janssen Mem. 15); and (2) failure to assert feasible alternatives, (GSK Mem. 13; Janssen Mem. 15–16). Plaintiff contends that Defendants continued to manufacture and distribute

---

[21] To the extent he is able to sufficiently allege such a claim, Plaintiff may also have causes of action for deceptive conduct under General Business Law section 349 and breach of implied warranty of merchantability. Courts, however, are divided as to the viability of section 349 claims in the context of a failure to warn of risks associated with prescription drugs. *Cf. Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 174 (W.D.N.Y. 2014) (holding that duty to warn in prescription drug was owed to physicians, not consumers, and that failures to warn were not "consumer-oriented" and not actionable under section 349); *Goldych v. Eli Lilly & Co.*, No. 04-CV-1477, 2006 WL 2038436, at *7 (N.D.N.Y. July 19, 2006) (dismissing section 349 claim based on lack of causation while explaining "[c]onsumer oriented conduct refers to 'conduct that has a broad impact on consumers at large.'").

Risperdal and Wellbutrin "despite reports of both medications causing liver damage and injury," resulting in his injuries. (Am. Compl. 5–6.) Plaintiff also alleges that Defendants "never altered the makeup of [or] composition of the[] drugs," failing to "ma[ke] any attempt to . . . eliminate or reduce the danger by some form of repair, upgrade or retrofit." (*Id.* at 6.)

"To state a claim for defective design under New York strict products liability law, a plaintiff must allege that: '(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.'" *S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11, 12 (2d Cir. 2014) (citations omitted); *see also Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 169 (W.D.N.Y. 2014) ("Under New York law, claims of design defect sounding in negligence are "functionally synonymous" to claims for design defect sounding in strict liability, and as a result, the claims are analyzed identically."); *but see Coleson v. Janssen Pharm., Inc.*, 251 F. Supp. 3d 716, 720 (S.D.N.Y. 2017) ("Design defect strict products liability claims differ from negligently designed product claims 'in that the plaintiff is not required to prove that the manufacturer acted unreasonably in designing the product.'" (citations omitted)). "The first two prongs function as a 'risk-utility balancing test' to determine whether a product is unreasonably dangerous." *DiBartolo*, 914 F. Supp. 2d at 621 (citation omitted). "[T]he relevant inquiry is whether the product as designed was not reasonably safe — that is, whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Id.* (citation and internal quotation marks omitted).

Plaintiff's allegations fail to state a claim for defective design of both Risperdal and Wellbutrin. His assertions that the drugs pose too significant a risk to be continued to be

manufactured are wholly conclusory. (*See* Am. Compl. 6 ("[Defendants] . . . allowed drugs into the public sector that they knew would cause more harm than good to consumers.")); *Lewis v. Abbott Labs.*, No. 08-CV-7480, 2009 WL 2231701, at *4 (S.D.N.Y. July 24, 2009) (dismissing design defect claim because allegations that prescription drug were "inherently [too] dangerous" were conclusory). In addition, Plaintiff concedes that adequate warnings would have minimized any harm. (*See* Am. Compl. 6 ("[Defendants'] failure to . . . warn . . . [infringed on] Plaintiff's rights of self determination . . . ."); *id.* ("Had such information been provided . . . to Plaintiff, it would have g[iven] Plaintiff an opportunity . . . to avoid the mishap of acquiring injury. . . .").) Plaintiff's complaint does not lie with the *design* of the medications but the harms flowing from a lack of knowledge of their side-effects.[22] *See DiBartolo*, 914 F. Supp. 2d at 622 (dismissing defective design claim because of concession that likelihood of harm would have been "minimal" if adequate warnings were provided); *see also Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 320 (D. Conn. 2016) (recognizing two different design defect claims for pharmaceutical drugs: "one based on . . . failure to provide adequate warnings and another based

---

[22] The Court does not hold that design defect liability is always precluded by an adequate warning. As discussed in *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 621 n.8 (S.D.N.Y. 2012), there appears to be conflicting authority on this issue. Nevertheless, design defect claims based on inadequate warnings, as here, would be foreclosed where there has been adequate disclosure of warnings. The Court's findings of the adequacy of the warnings for this claim mirror that of the discussion in the failure to warn claims. *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 315 (D. Conn. 2016) (finding failure to warn and design defect claim to have "amout[ed] to the same claim . . . in th[at] case). However, as discussed above, Plaintiff provides only conclusory allegations as to substantial likelihood of harm and also fails to adequately allege feasible alternatives as to all Defendants, both in terms of warnings of side-effects, and or makeup of the medications. *See Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 292 (6th Cir. 2015) ("Warnings can always be made 'better,' but 'better' is not the standard New York law requires — adequacy is." (citation omitted)); *Lewis v. Abbott Labs.*, No. 08-CV-7480, 2009 WL 2231701, at *4 (S.D.N.Y. July 24, 2009) (dismissing design defect claim for failure to allege feasible alternatives).

on the chemical composition of [the medication]").[23] Furthermore, "an outright ban" cannot be a viable alternative to sustain a design-defect claim. *See S.F.*, 594 F. App'x at 12 ("[A] design-defect claim will not stand if the only alternative is an outright ban."); *see also Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 300 (6th Cir. 2015) ("This 'stop-selling' rationale is 'incompatible with . . . preemption jurisprudence,' which 'presume[s] that an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability.'" (quoting *Mutual Pharmaceutical Co., Inc. v. Barlett*, 570 U.S. 472, 488 (2013)). Accordingly, the Court dismisses Plaintiff's design defect claim with prejudice.

### f. Fraud

Defendants argue that the fraud claim fails because Plaintiff fails to identify any fraudulent statements that he relied upon to his detriment. (GSK Mem. 15.) In addition, Defendants contend that the asserted allegations are not pleaded with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.* at 14; Janssen Mem. 8 n.9.) Plaintiff contends that Defendants have already been found liable for fraud as evinced by their various settlements with state governments for off-label promotion of Risperdal and Wellbutrin. (*See* Am. Compl. 5; Pl. Opp'n 2–4.) In lieu of any affirmative misstatements, Plaintiff relies on fraud by *omission* of material facts. (*See, e.g.*, Pl. Opp'n 3 ("Defendants were charged with concealing the dangers . . . from consumers, patients, and medical professionals.").)

---

[23] Design defect claims based on the composition of pharmaceutical drugs are likely preempted because the formulation of medications must be approved by the FDA. *See Batoh*, 167 F. Supp. 3d at 322 ("Once a drug — whether generic or brand-name — is approved, the manufacturer is prohibited from making any major changes to the qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application without prior approval by the FDA." (quoting *Mutual Pharmaceutical Co., Inc. v. Barlett*, 570 U.S. 472, 477 (2013)); *Yates*, 808 F.3d at 300 (holding design defect claims against brand manufacturer based on New York law to be preempted).

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015); *see Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (stating the elements of fraud under New York law).  Pleadings for common law claims premised on fraud are "subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b)." *Putnam Advisory Co*, 783 F.3d at 402–03 (internal quotation marks omitted) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

Plaintiff fails to state a claim for common law fraud.  Plaintiff has only alleged conclusory allegations of any fraudulent conduct.  As discussed earlier, Plaintiff assumes fraudulent conduct based on Defendants' misconduct as to other off-label uses of Risperdal and Wellbutrin.  Defendants' prior misconduct, even if closely related to the alleged fraud, does not eliminate the pleading requirements in this action.  Aside from the articles of Defendants' prior misconduct, Plaintiff assumes that Defendants did not disclose the side-effects of the medication because *he* was never informed.  (*See* Am. Compl. 4.)  Plaintiff's bare assertions are solely based on "information and belief" and cannot sustain a claim for fraud without any accompanying specific details.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) ("Although it is true that matters peculiarly within a defendant's knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all." (citation omitted)); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he allegations must be accompanied by a statement of the facts upon

which the belief is based." (citations omitted)). Repeatedly asserting conclusorily that Defendants committed fraud and concealed information is insufficient. (*See generally* Am. Compl.; Pl. Opp'n.) The Court dismisses Plaintiff's fraud claims with prejudice as to all Defendants.

### g. Claims against individual corporate Defendants

The Janssen Defendants argue that the Court should dismiss claims against its individual corporate officers because "Plaintiff has [at most] alleged they should be held liable for his . . . injuries by virtue of their roles as corporate officers." (Janssen Mem. 17.) Plaintiff contends that individual Defendants Heyman, Gorsky, and Duato should all be held liable because they were all "full time managing officers." (Pl. Opp'n 3.) Based on their positions, Plaintiff asserts that Heyman, Gorsky, and Duato are subject to "[d]irector[] liability" because they failed to uphold their duties to their corporate "principal[s]," by engaging in illicit conduct. (*Id.*) Plaintiff alleges that Heyman, Gorsky, and Duato "were instrumental in illicit licensing, sales, and marketing schemes that led them, as well as, Defendants Johnson and Johnson and Janssen Pharamceuticals [to get] in trouble with the law." (*Id.*)

Under New York law, corporate officers may be subject to individual liability for (1) "participat[ion] in the commission of a tort,"[24] or (2) where the corporation is the mere alter ego

---

[24] It is a well-settled principle of New York law that a corporate executive or officer may be held individually liable for torts that were allegedly committed by the executive's company only if the executive participated in or directly oversaw the allegedly tortious conduct. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2001) ("Under New York law, a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable." (citation and internal quotation marks omitted)); *Samad v. Goldberg*, No. 12-CV-5459, 2016 WL 6678923, at *8 (S.D.N.Y. Nov. 11, 2016) ("New York law provides that a corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties . . . ." (citations, alteration and internal quotation

of the owner or executives.[25]  *FLB, LLC v. Cellco P'ship*, 536 F. App'x 132 (2d Cir. 2013).

Plaintiff fails to state a claim against the individual Janssen Defendants because he relies solely on their status as corporate officers.  *See Bano*, 273 F.3d at 133 (affirming the dismissal of certain claims because "[t]he amended complaint [was] vague at best because he relies solely on their status in describing [the corporate officer]'s role, if any, in creating the [harm] on which the . . . claims are based"); *Krys v. Butt*, 486 F. App'x 153, 156 (2d Cir. 2012) (affirming dismissal of claims against a corporate officer because "all the complaint says about [defendant] was the he was an officer . . . who oversaw all of [the company]'s commodity pools." (alteration omitted)); *Samad*, 2016 WL 6678923, at *8 (finding that "the plaintiff's theory of personal liability is inapposite where the plaintiffs have not shown and cannot assert that [the corporate officers] engaged in the commission of the tort . . . in the course of performing their official corporate duties."); *Leon*, 992 F. Supp. 2d at 194 (granting the defendants' motion to dismiss "given the absence of any specific allegations as to [the corporate officer's] precise role as [p]resident . . . and his involvement in the alleged misconduct").  Throughout his submissions,

---

marks omitted)); *Leon*, 992 F. Supp. 2d at 194 ("[T]he general principle is that a corporate officer who commits or participates in a tort, even if it is in the course of the officer's duties on behalf of the corporation, may be held individually liable." (citing *Bano*, 273 F.3d at 131)).

[25]  "Alter ego liability exists when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own."  *OOO "Garant–S" v. Empire United Lines Co., Inc.,* 557 F. App'x 40, 45 (2d Cir. 2014) (quoting *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 195 (2d Cir. 2010)).  A party seeking to pierce the corporate veil under New York law and hold another entity or individual liable on a claim against a corporation must show: (1) the alleged alter ego "exercised complete domination over the corporation with respect to the transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil."  *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC,* 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997)).

Plaintiff attributes the alleged misconduct to Heyman, Gorsky, and Duato under the *assumption* that they must have been complicit based on their managerial positions.  Heyman, Gorsky, and Duato cannot be held liable for any claim based on such bare assertions.  Accordingly, the Court dismisses Heyman, Gorskey, and Duato from this action for all claims.

### III. Conclusion

For the foregoing reasons, the Court dismisses the claims against all the GSK Defendants and the individual Janssen Defendants (Heyman, Gorsky, and Duato) with prejudice. The Court also dismisses the design defect, and fraud claims against the Janssen Corporation Defendants (Janssen Pharmaceutical, Inc., and Janssen Research & Development, LLC) with prejudice.[26] However, the Court grants Plaintiff thirty (30) days to amend the Amended Complaint, only as to the Janssen Corporation Defendants, to allege failure to warn claims, consistent with the instructions provided in this Memorandum and Order.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 30, 2018
       Brooklyn, New York

---

[26] Plaintiff has already been afforded an opportunity to amend the Complaint once. Despite such an opportunity, Plaintiff has failed to cure any deficiencies identified by the Court or Defendants. Instead, Plaintiff has only reasserted the same or similar conclusory allegations. Therefore, the Court determines leave to amend as to these claims would be futile. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) ("Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile."); *see also McKethan v. New York State Dep't of Corr. Servs.*, No. 10-CV-3826, 2012 WL 2333415, at *2 (S.D.N.Y. June 19, 2012) ("At some point, defendants have a right to a final disposition of t[he] matter."). In addition, to the extent Plaintiff seeks to add any additional claims, he must first seek Defendants' consent or file a motion for leave to amend because he has already exhausted his one chance to do so as a matter of course. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff also may not add additional defendants without prior approval of the Court. *See id.* The Court will not consider any new allegations that are not within the scope of that permitted by this Memorandum and Order.