UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JOHN TRISVAN,
        PLAINTIFF,

AMENDED COMPLAINT

INDEX NO. 16-cv-00084

-against-

JURY TRIAL: YES

TOM HEYMAN, President,

Johnson and Johnson Development Corporation;

ALEX GORSKY, Chairman and CEO, Johnson and Johnson;

JOAQUIN DUATO, Chairman,

JOHNSON AND JOHNSON DEVELOPMENT CORPORATION;

JANSSEN PHARMACEUTICALS;

SIR PHILIP HAMPTON, Chairman, Glaxosmithkline;

ANDREW WITTY, CEO, Glaxosmithkline;

GLAXOSMITHKLINE, LLC.;

GLAXOSMITHKLINE, PLC.;

RAY REBORTIRA;

V & A PHARMACY;

        DEFENDANTS.
-----------------------------------------------------------------X

RECEIVED APR 27 2018 PRO SE OFFICE

I. PARTIES IN THE COMPLAINT:

A.) PLAINTIFF:

Name: JOHN TRISVAN
Street Address: 378 Monroe Street
County, City: Kings, Brooklyn
State, Zip Code: New York, 11221


B.) DEFENDANTS:

1.)
NAME: TOM HEYMAN,
STREET ADDRESS: 1125 Trenton-Harbourton Road
COUNTY, CITY: Mercer, Titusville
STATE, ZIP CODE: NEW JERSEY 08560.

2.)
NAME: ALEX GORSKY
STREET ADDRESS: 1125 Trenton-Harbourton Road
COUNTY, CITY: Mercer, Titusville
STATE, ZIP CODE: New Jersey 08560.

3.)
NAME: JOAQUIN DUATO
STREET ADDRESS: One Johnson and Johnson Plaza
COUNTY, CITY: Middlesex, New Brunswick
STATE, ZIP CODE: New Jersey 08933

4.)
NAME: Johnson and Johnson Development Corporation
STREET ADDRESS: 1125 Trenton-Harbourton Road
COUNTY, CITY: Mercer, Titusville
STATE, ZIP CODE: New Jersey, 08560

5.)
NAME: Janssen Pharmaceuticals
STREET ADDRESS: One Johnson and Johnson Plaza
COUNTY, CITY: Middlesex, New Brunswick
State, Zip Code: New Jersey 08933

6.)
NAME: SIR PHILIP HAMPTON
STREET ADDRESS: Philadelphia Navy Yard, 5 Crescent Drive
COUNTY, CITY: Philadelphia, Philadelphia
STATE, ZIP CODE: Pennsylvania 19112.

7.)
NAME: ANDREW WITTY
STREET ADDRESS: Philadelphia Navy Yard
COUNTY, CITY: Philadelphia, Philadelphia
STATE, ZIP CODE: Pennsylvania 19112;

8.)
NAME: GLAXOSMITHKLINE, LLC.
STREET ADDRESS: 5 Crescent Drive
COUNTY, CITY: Philadelphia, Philadelphia
STATE, ZIP CODE: Pennsylvania, 19112;

9.)
NAME: GLAXOSMITHKLINE, PLC.
STREET ADDRESS: 980 Great West Rd.
STATE, COUNTRY: Brentford, London, TW8, 9GS, UK...

10.)
NAME: Ray Rebortira
STREET ADDRESS: 10 Manhattan Avenue
COUNTY, CITY: Kings, Brooklyn
STATE, ZIP CODE: New York 11206

11.)
NAME: V & A PHARMACY
STREET ADDRESS: 72 Manhattan Avenue
COUNTY, CITY: Kings, Brooklyn
STATE, ZIP CODE: New York, 11206

## II. JURISDICTION:

This is a civil action seeking damages and relief of which this Court has jurisdiction of pursuant to 28 U.S.C. 1331 and 1332. All named Defendants have principal places of business here and operate in commerce of drugs that are sold and manufactured in which each Defendant operates in the states and counties listed demonstrating complete diversity of citizenship along with the effects doctrine for those named Defendants who operate and conduct businesses elsewhere and abroad. Defendants have operated in violation of Title 21 CFR and UCC, where, in this case, they have falsely advertised their products and misrepresented themselves by presenting misleading facts to market their products to where Plaintiff sustained an injury as a result granting this Court personal and subject matter jurisdiction over this case.

## III. FACTS:

Plaintiff JOHN TRISVAN is a 42 year old man who in 1999 was diagnosed with depression and personality disorder. On or about October 2011, Plaintiff John Trisvan began to see Defendant Ray Rebortira, a local psychiatrist working at Williamsburg Treatment Center at 10 Manhattan Avenue, in Brooklyn, New York 11206, who began prescribing Plaintiff Wellbutrin and Risperdal to treat his symptoms. From its inception to its present time, Plaintiff was never informed by his psychiatrist of any adverse side effects that could occur by consuming these drugs he was being prescribed: Risperdal and Bupropion (Wellbutrin). Plaintiff was never informed by mental health staff that there would be adverse effects behind him being prescribed these drugs.
On Sept. 14, 2015, after blood tests were performed by Plaintiff's primary care provider/medical physician, L. Moysik, MD., it was discovered that Plaintiff was suffering from an enlarged liver and early stages of fatty liver disease. Once speaking to his physician Dr. Moysik about their findings, it was told to Plaintiff by the medical professional that the medication that he was being prescribed by his psychiatrist, Ray Rebortira, had been said to have caused liver injury and damage. Once confronted with this revelation, Defendant Rebortira denied claims made by Dr. Moysik, and stated that he knew of no harm the medications he was prescribing Plaintiff could or would cause.
During this same time, Plaintiff began to receive his prescribed medication from Defendant V & A Pharmacy, located at 72 Manhattan Avenue, Brooklyn, New York, who, although were aware of the medication Plaintiff was being provided, failed to inform him of any side effects Plaintiff could begin experiencing by such usage and consumption. At no time was Plaintiff ever told of the risks of these medications. Although Plaintiff received paperwork/leaflets each time he received his medications from Defendant V & A Pharmacy, there was nothing on these leaflets indicating to him that any of his prescribed medications would or could cause damage to his liver and were life threatening and dangerous to his physical well being.

In 1994, Defendant Johnson and Johnson Development Corporation introduced Risperdal to the public, in which, Defendant Janssen Pharmaceuticals manufactured the drug for the company. Defendant Tom Heyman is currently President of Johnson & Johnson Development Corporation, as well as, CEO of Janssen Pharmaceutica NV in Belgium. Defendant Heyman worked for Defendant Johnson and Johnson Development Corporation for well over 25 years. Defendant Heyman was instrumental in his involvement in the licensing and legal operations of the corporation. According to the company website, Defendant Heyman utilized his expertise to assist the corporation in Business Development as well as serve as Head of the IM Research and Early Development (RED) organization. Defendant Heyman oversees the functions of both companies as well as its products that's distributed to their consumers.

Defendant Alex Gorsky is Chairman as well as CEO of Johnson and Johnson, both of which positions him as overseer of such company who's responsible for what products are sold and distributed by the company. This includes, but not limited to, the drug in question: Risperdal. Defendant Gorsky, according to the Johnson and Johnson's website, began his career "as a sales representative with Defendant Janssen Pharmaceuticals in 1998". Over the next 15 years, Defendant Gorsky advanced through positions of responsibility in sales, marketing and management. Through his direct involvement of this drug, Risperdal soared to over $20 billion in sales worldwide according to news outlets.

Defendant Joaquin Duato is the worldwide Chairman of pharmaceuticals, and a member of Johnson and Johnson's management who oversees the quality, operations and compliances of Johnson and Johnson and Janssen Pharmaceuticals and its global commercial businesses. Defendant Duarto is a 27 year veteran of the Johnson and Johnson Corporation. Defendant Duato took a leadership position once the corporation was found guilty of fraud and violations of the Commercial Protection Act.

Defendant Johnson and Johnson Development Corporation are the distributors behind Risperdal. It is the parent corporation to Defendant Janssen Pharmaceutical who, as stated in news outlets, are the manufacturers of Risperdal, the drug in question. Although Plaintiff was being prescribed these drugs, Defendants Rebortira and V & A Pharmacy failed to warn Plaintiff of the possible side effects and risks that the drug in question could possibly contribute to his major organs, and in particular, his liver.

GlaxoSmithKline (GSK) are the manufacturers and distributors behind Bupropion (Wellbutrin), the antidepressant drug made by the pharmaceutical company of which Defendants Sir Philip Hampton and Andrew Witty, who were respectively, the Chairman and CEO of GlaxoSmithKline, PLC., the parent corporation, who both oversaw the manufacturing as well as distribution of the drugs being made and sold by their subsidiary: GlaxoSmithKline, LLC., who are the makers of Wellbutrin.

In 2000, GlaxoWellcome and SmithKline Beecham merged into Defendant GlaxoSmithKline PLC, which is the parent corporation, who's location and headquarters is in Brentford, London. It is through this merger created that Defendants Witty and Hampton became in charge of mergers, acquisitions, and other business dealings with the company's distribution and manufacturing of the drug in question.

The effects doctrine, in which, involves extraterritorial behavior or crimes adversely affecting commerce or harm citizens within the United States grants federal courts jurisdiction to hear cases involving international defendants.

Defendants Sir Philip Hampton and Andrew Witty during the time Plaintiff was injured was presently the Chairman and CEO of GlaxoSmithKline PLC according to the company's website. (Defendant Andrew Witty has, as of 2017, retired from his position). GlaxoSmithKline, PLC. is the parent corporation of Defendant GlaxoSmithKline LLC, who are the makers and manufacturers of Wellbutrin. With Defendant GlaxoSmithKline LLC., being a subsidiary of GlaxoSmithKline PLC, Defendants Hampton and Witty maintained joint control and held a majority of its shares and proceeds from the corporation.

Defendant Witty joined Glaxo UK as a management trainee in 1985. He held various positions in the UK, including Director of Pharmacy & Distribution in Glaxo Pharmaceuticals UK, Director of Business Development of Biocompatibles Limited and International Product Manager of Glaxo Holdings PLC. Defendant Witty served as managing Director of Glaxo South Africa and Area Director of South and East Africa. He also served as vice president and general manager of Glaxo Wellcome, Inc., which is a subsidiary of GlaxosmithKline with responsibility for strategic development, marketing execution and new product positioning.

Defendant Sir Philip Hampton is a British businessman and current chairman of GlaxoSmithKline. With his expertise in

Defendants were instrumental in their efforts to manipulate consumers. It was due to Defendants' marketing tactics that led to criminal and civil charges placed upon the corporation by various states Attorney Generals throughout the United States. Defendants blatantly lied to consumers about the uses of their drugs, and began to mislead consumers about the various ailments Risperdal and Wellbutrin can treat constituting false advertising, along with deceptive tactics in violation of New York's UCC, along with 12 CFR 202 (5) (i) (iii); (6) (i)(xv); (7) (i) (ii) (vii) (viii); and (3).

Defendants Witty and Gorsky being the marketing gurus behind Johnson and Johnson's and GlaxoSmithKline's marketing strategies, it was their very own blueprints that led to their company's implementations of false claims of safety; which led to Plaintiff suffering an injury. Defendants, in unison, preyed upon the weak, and Although Defendants were aware that Risperdal and Bupropion (Wellbutrin) cause liver damage/liver injury, it was continuously prescribed by mental health professionals and were made available to Plaintiff despite the harm that the drug was known to have caused. Both companies, who have rightfully been named as Defendants, have been found guilty of malfeasance constituting criminal activity. Court documents indicated that these defendants were instrumental in promoting false information about these two drugs that they knew would place innocent people like Plaintiff in harm's way. Choosing profiteering over safety. In order to sell these drugs, Defendants devised a plan to mislead Plaintiff and others to take the medication and hide the facts about what the drugs treated and what they didn't.

Plaintiff was never informed by Defendant Rebortira that the medication he was prescribing him was harmful to him. Defendant refused to expose the truth about the numerous side effects Plaintiff could suffer by consuming the medication. This witholdal of information led Plaintiff to taking this drug without proper warning, which resulted in Plaintiff suffering liver disease. Physicians have a duty to warn its patients of any risks and danger associated with the medication they (the physicians) are prescribing. In this case, both Plaintiff's psychiatrist as well as pharmacist, failed to uphold their duty to warn Plaintiff of the harm these drugs could cause to his liver, which constituted negligence and injury to Plaintiff.

Defendants have been found guilty of fraud as well as misleading the public and consumers of the harm that these drugs pose. Their actions were deemed criminal and posed harm to millions of consumers throughout the United States. Though Defendants Witty and Hampton may reside and operate abroad, the effects doctrine grants this Court jurisdiction to hear the case and hold these Defendants named accountable for their actions, which in unison, led to Plaintiff suffering an injury and damage to his vital organ.

Defendants intentionally hid from the public the harm that these drugs caused. They did so by misleading consumers of the great harm and severe side effects these drugs that they manufactured can cause. Studies made by Defendants showed that patients demonstrated adverse side effects during the time of being administered Bupropion and Risperdal. That ratio was not only established but demonstrated once the drugs were sold on the market. They lied to lure minors, adults, and the elderly alike who were susceptible to using these drugs that they knew would cause harm. Despite reports of both medications causing liver damage and injury, the distribution of these drugs were not discontinued to repair and/or rectify leaving Plaintiff to develop liver damage and fatty liver disease.

Defendants Tom Heyman, Alex Gorsky, Joaquin Duato, Johnson and Johnson Development Corporation, Janssen Pharmaceuticals; Sir Philip Hampton; Andrew Witty; GlaxoSmithKline, LLC.; GlaxoSmithKline, PLC.; Ray Rebortira; and V & A Pharmacy placed Plaintiff's life in danger without his knowledge, and left him suffering from a life threatening disease..

Defendants failed to inform Plaintiff of the harm caused by usage of their manufactured drugs: Risperidone (Risperdal) and Bupropion (Wellbutrin). Defendants conspired with one another to introduce dangerous drugs to the public sector knowingly with no regards to the harm and death that it may cause. They withheld key elements of facts that were material, which were crucial and needed for Plaintiff to make an appropriate decision in his treatment of his disease.

Although Defendants put forth safety information, no mention of liver damage, cirrhosis or fatty liver disease was ever stated as a side effect and possible consequence behind actively taking Risperdal and Wellbutrin indicating that they withheld such information from Plaintiff deliberately without regards to the harm these drugs will ultimately propose.

Defendants Johnson and Johnson Development Corporation; GlaxoSmithKline, LLC. along with GlaxoSmithKline PLC were previously tried before the Senate and federal courts throughout the United States for their malfeasance and abuse of law, which led to countless numbers of consumers and patients injured for their misdeeds. Plaintiff was one of them.

Defendants have a duty to provide consumers with warnings of hidden product dangers. They, in unison, failed to do so once Defendants chose to distribute false misleading information about their drugs, which misled Plaintiff and led to him sustaining an injury. By law, Defendants were obligated to inform Plaintiff of the dangers of these drugs prior to being prescribed and administered these drugs. Defendants had a duty to warn Plaintiff about such potential life threatening conditions that could result from usage of their medication. Their failure to uphold such duty to warn and their deliberate withhold of the truth resulted in failure to protect plaintiff's individual rights and Plaintiff's rights of self determination as well as Plaintiff's rights to determine his own fate. Although Defendants have denied any wrongdoing, they have nevertheless accepted responsibility for such misdeeds by apologizing for such malfeasance. Plaintiff was never informed that the drug he was being administered by Defendants was never made to treat his diagnosis of personality disorder. Defendants Rebortira and V & A Pharmacy being in kahoot, with the drug companies hid the product dangers that came along with consuming the drug, which ultimately led to Plaintiff suffering liver damage. By law, they were obligated to inform Plaintiff true statements about the drugs in question and its possible side effects, which they failed to do.

Defendants Janssen Pharmaceuticals and GlaxoSmithKline, LLC. manufactured Risperdal and Wellbutrin. In spite of what studies shown and demonstrated to these manufacturers, they never altered the makeup of such composition of these drugs. They allowed these drugs to be sold and distributed without any regards to thousands of people who would suffer a disease as a result of these medications Defendants had released to the world. To add insult to injury, Defendants constructed a marketing scheme spearheaded by Defendants Alex Gorsky and Andrew Witty to lure the public into signing on to these new drugs, which was to allegedly provide benefit to individuals, but like Plaintiff and others, consequently, led to development of disease. They misled the public, and allowed drugs into the public sector that they knew would cause more harm than good to consumers. Defendants knowingly lied and deceived the public for monetary gain, and we are asking the Court to hold all those responsible accountable for their actions.

Had such information been provided and produced to Plaintiff, it would have gave Plaintiff an opportunity to know of its dangers and to avoid the mishap of acquiring injury to one of the body's vital organs. By Defendant's negligence to warn Plaintiff of the dangers of these drugs, along with true statements of what the drugs' usage without the minimization of such facts of truth, once it had been determined that the drugs posed a serious harm to consumers, it placed Plaintiff in a vulnerable position unknown to him and ultimately led to Plaintiff's liver injury. Such acts violated Code of Federal Regulations along with New York's Uniform Commercial Law granting this Court federal jurisdiction to hear this matter and provide Plaintiff relief. Patients depend upon doctors to make informed decisions on prescription drugs. Defendants had a duty to remedy dangerous conditions discovered in its products after their sales.

After such discovery, Defendants never made any attempt to physically eliminate or reduce the danger by some form or repair, upgrade or retrofit. Ingredients, such as, silicon dioxide and titanium dioxide has been linked to nerve damage, as well as, inflammatory bowel diseases. These ingredients contained nanoparticles, which it has been ruled unsafe for human consumption. Along with these other ingredients/properties, Defendants manufactured these

drugs using polyethylene glycol, which if anything is the actual ingredient linked to liver toxicity, which could have been the very same ingredient which led to Plaintiff suffering liver disease. Removing these properties from the drugs' make up would have effectively altered the studies of specimens, and could have rightfully reduced patients/consumers from developing disease. Alteration of this sort could have lessened the threat Defendants posed to Plaintiff. Defendant continued to run their companies as normal as they have done before disregarding any significant or severe ailments that stemmed from these dangerous drugs that they continued to leave on the market. Defendants actions were deliberate, sadistic, and malicious. They falsified documents and statements in order to make their product more "consumer friendly" using deception to market their product violating UCC as well as CFR. Their statements were misleading, false, and failed to reveal facts that were material in relation to consequences that resulted from usage of their product and drugs. One cannot take the weight for the other. A parent company cannot be spared liability while the subsidiary corporations takes the fall. The fruit doesn't fall far from the tree. Fruit from the poisonous tree. They all acted in concert, from misleading the public using their manipulative marketing skills to sell their products to potential buyers and patients who was suffering from ailments and developed disease as a result of consuming these very same products.

Plaintiff made sure to file this claim once and when he discovered injury to his liver.
Plaintiff is aware of the fact that which there being no way to reverse damage to his liver, he may indeed succumb to this irreversible illness. Although Defendants have insisted that they have not committed any wrongdoing, nevertheless, Defendants accepted responsibility and have expressed their utmost apology for the mishap. Plaintiff is asking that those who were involved in the administering of such drugs be found liable and responsible for injuries Plaintiff has sustained.

WHEREFORE, PLAINTIFF ASKS OF THIS COURT TO HOLD DEFENDANTS TOM HEYMAN, ALEX GORSKY, JOAQUIN DUATO, JOHNSON AND JOHNSON DEVELOPMENT CORPORATION, JANSSEN PHARMACEUTICAL, SIR PHILIP HAMPTON, ANDREW WITTY; GLAXOSMITHKLINE, LLC; RAY REBORTIRA; AND V & A PHARMACY, AT FAULT, FOR SUCH WRONGDOING, AND THAT PLAINTIFF RECEIVES COMPENSATORY RELIEF NO LESS THAN 10 MILLION U.S. DOLLARS ALONG WITH ANY OTHER FURTHER RELIEF THE COURT DEEMS APPROPRIATE.

DATED: April 27, 2018

Signature of Plaintiff